## Delabar Burrows v. Benjamin Bangs.

*Mortgages: Certificate of deposit: Payment: Risk of loss.* Complainant negotiated with defendant for a loan of $2,000 to enable him to pay off two mortgages on his farm, one for $600 and one for $1,000, the latter held by one McGinnis, and past due but payment not required for three months to come; defendant was willing to loan the amount only on a first mortgage on the farm, but on applying to his banker for the funds, the banker, though owing him more than the amount, could not well pay the whole sum at once, and it was therefore arranged that one-half should be paid down, and turned over to complainant, out of which the $600 mortgage was to be satisfied; that complainant should give defendant a mortgage on the farm for $2,000, and that the banker should give his certificate of deposit for $1,000 payable to the order of complainant when the McGinnis mortgage should be discharged; the banker failed before the day at which it was arranged the McGinnis mortgage was to be paid and the certificate became worthless; complainant paid back the thousand dollars received from defendant, with the interest thereon and tendered him the certificate of deposit and required a discharge of his mortgage, which being refused he filed this bill to have the mortgage declared satisfied:—

*Held,* That there being no express agreement that complainant should receive the certificate as payment, and the fair inference from all the facts being that it was only held by him as collateral and not as payment, the loss upon the certificate should be borne by defendant and complainant should have the relief prayed.

*Evidence: Certificate of deposit: Ownership: Bank accounts.* In such case the fact that defendant after the giving of this certificate of deposit settled with the banker on the basis of a credit to the latter for the amount thereof could have no bearing on the question of whose risk the certificate was held at, for the banker should, as between him and defendant, be credited with the amount of the certificate while it was outstanding, no matter who owned it.

*Evidence: Certificate of deposit: Risk of loss.* Nor does the fact that complainant attempted to get the money on the certificate before the day fixed tend to show an understanding that he considered the certificate as being held at his risk.

*Mortgages: Refusing discharge: Statutory penalty: Good faith.* There having been an honest difference between the parties regarding their rights, the statutory penalty is not imposed upon defendant for refusing to discharge the mortgage after it had been satisfied.

*Heard June 8.        Decided June 20.*

Appeal in Chancery from Oakland Circuit.

*T. G. Smith* and *M. E. Crofoot,* for complainant, as to when paper transferred is to be held to have been received as payment, cited: *Ellis v. Wield, 6 Mass., 321; McIn-*

*tyre v. Kennedy, 29 Pa., 448; McLaughlin v. Borard, 4 Watts, 308; Tobey v. Barber, 5 Johns., 68; Johnson v. Weed, 9 Johns., 310; Reget v. Merrit, 2 Caines, 117; Berry v. Griffin, 10 Md., 27; Perit v. Pittsfield, 5 Rawle, 166; Van Eps v. Dillage, 6 Barb., 244; Archibald v. Argall, 53 Ill., 309; Lear v. Freelands, 45 Miss., 559; Kearslake, v. Morgan, 5 T. R., 513; Laide v. Rhodes, 1 M. & W., 154; Glenn v. Smith, 2 G. & J., 493; Huse v. McDaniel, 33 Iowa, 406; Jewett v. Bleak, 43 Ind., 568; Matteson v. Ellsworth, 33 Wis., 488; Lindsey v. McClelland, 18 Wis., 481; Mooring v. Ins. Co., 27 Ala., 254; Welch v. Allington, 23 Cal., 322; Davidson v. Bridgeport, 8 Conn., 472; Hodgen v. Latham, 33 Ill., 344; May v. Gamble, 14 Fla., 467; Middlesex v. Thomas, 20 N. J. (5 C. E. Gr.), 39; Jose v. Baker, 37 Me., 465; Ward v. Bourne, 56 Me., 161; Govern v. Littlefield, 13 Allen, 127; Bridge v. Batchelder, 9 Allen, 394; Berry v. Griffin, 10 Md., 27; Hall v. Richardson, 16 Md., 396; Derickson v. Whitney, 6 Gray, 248; Devlin v. Chamblin, 6 Minn., 468; Barnet v. Smith, 30 N. H. (10 Foster), 256; Wright v. Lawton, 37 Conn., 167; Gorgan v. Prime, 10 Ired., 385; Whitbeck v. Van Ness, 11 J. R., 408; Noel v. Murray, 13 N. Y., 167; Young v. Stahelin, 34 N. Y., 258; Gardner v. Gorham, 1 Doug., 507; Allen v. King, 4 McLean, 128; Hudson v. Bradley, 2 Cliff., 130; Baker v. Draper, 1 Cliff., 420; Downey v. Hicks, 14 How., 240; Maze v. Miller, 1 Wash. C. C., 328; Harris v. Donaldson, 4 Wash. C. C., 271; Peter v. Beverly, 10 Pet., 558, 567; Lyman v. U. S. Bk., 12 How., 225; Hooper v. Strasburger, 37 Ind., 390; Hotchin v. Secor, 8 Mich., 494; Phœnix Ins. Co. v. Allen, 11 Mich., 501.*

*A. C. Baldwin,* for defendant, argued that the legal presumption is, that a negotiable bill was intended to be,

34 MICH.—39.

and in fact is, an extinguishment of the original demand: *Varner v. Nobleborough*, 2 *Me.*, 121; *Descadillas v. Harris*, 8 *Me.*, 298; that a promissory note, if given and accepted as payment of a debt, will be regarded as payment: *Abercrombie v. Mosely*, 9 *Port.*, 145; *Slocumb v. Holmes*, 2 *Miss.*, 139; *Comstock v. Smith*, 14 *Me.*, 202; *Newell v. Hussey*, 18 *Me.*, 249; *Pope v. Tunstall*, 2 *Ark.*, 209; *Watson v. Owens*, 1 *Rich.*, 111; *Carr v. Hall*, 5 *Mo.*, 59; *Bange v. Warren*, 34 *Me.*, 324; *Paine v. Dwinell*, 53 *Me.*, 52; *Ferdon v. Jones*, 2 *E. D. Smith*, 106; *Heidenheimer v. Lyon*, 3 *E. D. Smith*, 54; that *the taking of the note* raises the presumption that a settlement is made of all outstanding matters: *Maynard v. Johnson*, 4 *Ala.*, 116; *Butts v. Dean*, 2 *Met.*, 76; *Ilsby v. Jewett*, 2 *Met.*, 168; *Fowler v. Lerding*, 34 *Me.*, 455; *Woodville v. Reed*, 26 *Md.*, 179; *Morse v. Elleber*, 4 *Rich. S. C.*, 600; *Rowe v. Collier*, 25 *Texas (Supp.)*, 252; *Collamer v. Langdon*, 29 *Vt.*, 32; *Hutchins v. Olcutt*, 4 *Vt.*, 555; *Wait v. Brewster*, 31 *Vt.*, 516; *Arnold v. Sprague*, 34 *Vt.*, 402; *Plankinhorn v. Cave*, 2 *Yeates*, 370; that "if a person buy goods of another who agrees to receive a certain bill in payment, the buyer's name not being on it, and that bill being afterwards dishonored, the person who took it cannot recover the price of his goods from the buyer:" 15 *East.*, 7; *Ellis v. Wild*, 1 *Mass.*, 321; *Noel v. Murray*, 13 *N. Y.*, 167; *American Leading Cases*, 297, 298, 299, and 300; that upon the question of presumption of payment there is a uniformity of authorities in all the states, and this presumption must be rebutted by affirmative proof; a mere statement that "he did not receive it in payment will not suffice;" and it is *prima facie* evidence of a settlement of accounts: *Thornton v. Williams*, 14 *Ind.*, 518; *Gaskin v. Wells*, 15 *Ind.*, 253; *Smith v. Bissell*, 2 *Greene (Iowa)*, 379; *Grimmell v. Warren*, 21

*Iowa, 11; Burlington v. Greene, 22 Iowa, 508; Lake v. Tyson, 6 N. Y., 461; Youngs v. Stahelin, 34 N. Y., 258.*

COOLEY, CH. J:

The important facts in this case are the following:

At the beginning of July, 1871, complainant was owner of real estate subject to certain incumbrances, among which was a mortgage of one thousand dollars, held by one Mrs. McGinnis. This mortgage was past due, but payment was not demanded. The mortgage year ended October 20th in each year. Being desirous to pay off these incumbrances, he entered into a negotiation with the defendant for a loan of two thousand dollars. It appears that one Latourette, a banker at Fenton, was indebted to defendant in the sum of several thousand dollars, and the money, if loaned, was expected to be obtained from him. Defendant called on Latourette, who informed him that he could not well pay two thousand dollars at that time, and inquired whether a part of that amount would not answer. Defendant on inquiry ascertained that Mrs. McGinnis did not care for her money before the mortgage year had expired, and he informed Latourette of this fact. It was finally arranged that Latourette should pay one thousand dollars at that time and give a certificate of deposit for another thousand, upon which the money should not be called for until October 20th following, when it would be needed to pay the McGinnis mortgage. What followed between these parties is shown by their testimony, which is here given.

Complainant testified: "Before the papers were made I went with Bangs to Latourette's bank, and Bangs informed Latourette that we were going to make the arrangement, and we then went to Smith's office to make the papers. I was to have the one thousand dollars then. I objected to giving the mortgage for two thousand dollars, not receiving but one thousand dollars. I proposed to give the mortgage for one

thousand dollars then, and when I got the other one thousand, I would give a mortgage for that and put it all into one, for the reason that I did not want three thousand dollars against my place. Mr. Bangs said he would rather have it all in one mortgage, assuring me that the money would be paid at the time agreed upon, and Mr. Latourette was paying ten per cent. interest and it·would balance the ten per cent. I was to pay him. Then, with that assurance, the mortgage was drawn for two thousand dollars. ·I then stated to Mr. Bangs that I wished him to leave the note and mortgage with Mr. Smith until the other one thousand dollars was paid. He was not· inclined to do it. I then asked him to hold it from record until that one thousand dollars was paid, so that I might have the Mc-Ginnis mortgage and the other mortgage discharged; then the place would be clear and he would have the first mortgage. He did not make any reply to this. We then went together to the bank. Mr. Bangs said to Mr. Latourette: 'Mr. Burrows wants one thousand dollars now, as we talked, and the other as we had agreed upon.' Mr. Latourette gave to me or Bangs a certificate for one thousand dollars, being the amount to be paid down. Then Mr. Bangs said to Mr. Latourette: 'You are a man of large experience; how can this other thousand be fixed so that when it is paid it shall discharge the McGinnis mortgage?' and that he wanted the first mortgage on the place. Then Mr. Latourette said it could be a condition in the certificate of deposit that it was to pay the McGinnis mortgage, and nothing else. This one thousand dollars was to be paid the 20th of October, 1871. Mr. Latourette went on and made out the certificate of deposit, and Mr. Bangs took it and passed it over to me. As I took the certificate and stepped a little back from the counter, I saw Mr. T. G. Smith passing,' and called him in, and he says, 'this only draws seven per cent.; I thought it was to draw ten per cent.' Smith said I had better have it put in; then it would be sure. I then called Mr. Latourette's attention to it and passed the certificate to him, and

he wrote across the face of it, 'interest at ten per cent.,' and handed it back to me. I remarked that it was a strange way of doing business. It was said, and distinctly understood, that this one thousand dollars was not to be paid or called for until the 20th of October, 1871, and then was to be paid on the McGinnis mortgage, and was so expressly understood as between me and Mr. Bangs, or any body else. I did not accept this certificate as payment, and never agreed to receive it as payment. It was Mr. Bangs' suggestion that the last payment of one thousand dollars was put off to the 20th day of October. The reason the payment was put off to the 20th of October was because it was not convenient for Mr. Latourette to pay it before."

The following is a copy of the certificate:

"D. L. Latourette, successor of the First National Bank of Fenton, Michigan.

"FENTON, July 6, 1871.

"B. Bangs has deposited in this bank one thousand dollars, payable to the order of D. Burrows when Mrs. L. D. McGinnis shall discharge a certain mortgage on said Burrows' farm, on the return of this certificate. Interest ten per cent.

"$1,000.         (signed)         D. L. LATOURETTE."

The testimony of Mr. Bangs was as follows:

"I made an arrangement to loan the complainant some money in July, 1871. I first had conversation in the early part of July that year. Complainant applied to me for the loan of two thousand dollars to be secured by a mortgage on his farm. I inquired in reference to any other incumbrance that might be on the place, and stated my unwillingness to loan the amount on his farm unless it was free from all incumbrances. I received this assurance, that although there was then a mortgage of six hundred dollars and another of one thousand dollars, it should be all cleared with this money he wished to loan of me. The six hundred dollar mortgage he said could be taken up very soon, or on the receipt of the money, or words to that purport.

I am not positive as to the words used.    Mr. Burrows said
to me at one time in conversation, that Mrs. McGinnis asked
him why he took money of Mr. Bangs and agreed to pay
him ten per cent. interest, while that was all he was pay-
ing either before or after this.    I went on after getting the
conditions that have been testified to here, and we talked
the matter over of loaning the money.    Mr. Burrows and I
went to the bank together and found Mr. Latourette there,
and I made arrangements to loan complainant two thousand
dollars at ten per cent. interest on a mortgage on his farm,
being the mortgage in question.    He was to receive four
hundred dollars in cash and a deposit of six hundred dol-
lars in the bank to remove the six hundred dollar mortgage,
and a further deposit of one thousand dollars to remove the
one thousand dollar mortgage.    I paid him four hundred
dollars, or Mr. Latourette did by my direction, and placed
six hundred dollars more at his disposal to pay the six hun-
dred dollar mortgage, and one thousand dollars more at his
disposal, as conditioned in the certificate, being the certifi-
cate in question.    As near as I can recollect, it was talked
between Mr. Burrows and I that one thousand dollars, when
it was drawn from the bank, should go to pay that McGin-
nis mortgage.    This is the substance.    Nothing was said
about my retaining any interest in that thousand, only that
it was to go to pay the McGinnis mortgage and to make
my security good on the farm.    At the time I went to the
bank that day to get the money, Mr. Latourette owed me
five thousand seven hundred and two dollars and sixty-six
cents, including interest."

These statements, which were not materially varied on
cross-examination, are sufficient to enable us to understand
the transaction.    Latourette failed October 9, 1871, and one
or the other of these parties must lose the amount of the
certificate referred to.    Complainant has paid back the one
thousand dollars received by him from defendant, with the
interest thereon, and tendered to defendant the certificate,
and now demands a discharge of his mortgage, on the ground

that the certificate was never a payment to him, but only held by him to receive the money upon for Mr. Bangs when it should be paid, and apply it on the McGinnis mortgage; defendant, on the other hand, claims that the certificate was received by complainant as so much money, and was held by him at his own risk.

It is plain that there was no express agreement that complainant should receive the certificate as payment; but defendant insists that it is a fair inference from all the circumstances that such was the understanding, and he places some reliance upon the fact that he afterwards settled with Latourette on the basis of a credit to the latter for this sum, as showing that such was his own understanding. But this, we think, proves nothing, as Latourette should have been credited with the amount of the certificate while it was outstanding, no matter who owned it. He also showed an attempt by complainant to obtain payment of the certificate before October 20, 1871, as furnishing some evidence in the same direction; but this was just as consistent with one view as it was with the other. In short, we do not find any circumstances in the case which tend to throw light upon the understanding of the parties, except those which attended the original transaction.

And we think it is not a fair inference, from the original arrangement as detailed by the parties, that complainant was to receive the certificate, wait for payment upon it until the 20th of October following, and be himself at the risk of collection. The transaction appears to have been this: Complainant wanted the two thousand dollars to pay off certain debts. Defendant was willing to loan it to him, but could only obtain for the purpose one thousand dollars in cash and the paper of his debtor for another thousand, payable at a future day. Complainant could and did arrange so that this payment at a future day should answer his purpose. But nothing can be plainer than that it was not understood that the mortgage of defendant was to be a valid

and effectual mortgage for the whole two thousand dollars from that time. Defendant had expressly declined to take a mortgage that should not be a first lien on the premises; and he could not obtain a first lien until the McGinnis mortgage was paid off. It was to pay this off that the last one thousand dollars was set aside, and defendant expressly refused to allow the transaction to assume any shape that should put the amount at the control of complainant. The amount was only to be paid when the McGinnis mortgage was paid off; the understanding being, that payment of this sum and satisfaction of the McGinnis mortgage were to be simultaneous acts; and it was by that payment that defendant was to obtain the first mortgage upon the premises, for which he had stipulated. Until that time, however, he had what he evidently regarded as equivalent; he had his mortgage for which he had paid one thousand dollars, subject to the McGinnis mortgage of one thousand dollars, and for the satisfaction of that he had made provision, so that its payment would give him the first lien for two thousand dollars. In effect, defendant said, "I will not take a mortgage of two thousand dollars subject to the mortgage to McGinnis; but I will take a mortgage for that nominal amount now, paying a thousand dollars of the consideration, and pay the remainder when I can obtain it to satisfy the McGinnis mortgage. When I make that payment, the McGinnis mortgage will be out of the way, and I will have a valid mortgage for the two thousand dollars, according to the understanding." This is what we think he meant by the original arrangement. Now, however, that the certificate has become uncollectible, he attempts to hold a mortgage of two thousand dollars subject to the McGinnis mortgage for one thousand dollars; which is precisely the lien which in the negotiations he declined to take, and which the complainant was equally unwilling to give.

We are of opinion that defendant's mortgage is satisfied.

But as there has been an honest difference between these

parties regarding their rights, we do not think the defendant is subject to the statutory penalty for not discharging the mortgage.

The decree of the court below must be reversed, and decree be entered in this court declaring the mortgage satisfied. Complainant will recover the costs of both courts.

The other Justices concurred.