Schumacher v. Falter, 113 Wis. 563.

| | 113 | 563 |
| --- | --- | --- |
| | 'e117 | 1 59 |
| | f 117 | 1 60 |
| | f 117 | 1 61 |

SCHUMACHER and wife, Appellants, vs. FALTER, Respondent.

*February 21—March 11, 1902.*

*Mortgages: Refusal to discharge of record: Penalty: Statutes: Findings: Practice: Res adjudicata.*

1. Under sec. 2256, Stats. 1898, declaring that "if any mortgagee . . . or assignee, after a full performance of the conditions of the mortgage . . . shall . . . refuse or neglect to discharge the same, . . . he shall be liable to the mortgagor, his heirs or assigns, in the sum of $100, and for actual damages," where there is no intentional wrong in the refusal to discharge, but rather a reliance in good faith upon some supposed legal right, the penalty will not be imposed, even though the supposed legal right may be found not to exist.

2. In an action to recover the penalty provided by sec. 2256, Stats. 1898, it appeared, among other things, that payment of the mortgage debt was made to the real estate agent who had negotiated the loan and who was the person that then had actual possession of the note and mortgage. His authority to receive payment was contested. *Held*, that, when the court had found defendant's refusal to satisfy the mortgage to have been made honestly and in good faith, no other findings should have been made, and that a motion for the direction of a verdict for defendant should have been granted.

3. In such case findings, except on the honesty and good faith of defendant's refusal to discharge the mortgage, cannot be held to be *res adjudicata*, or as settling any issue regarding the payment of the mortgage debt.

APPEAL from a judgment of the circuit court for Rock county: B. F. DUNWIDDIE, Circuit Judge. *Affirmed.*

This is an action originally brought in justice's court to recover the penalty for failure to discharge a mortgage imposed by section 2256 of the Wisconsin Statutes for 1898. The answer was a general denial. The plaintiff recovered judgment in the justice's court, and the defendant appealed to the circuit court, where a jury trial was had.

The evidence showed that on August 5, 1897, one Emily

Buege gave a note for $300 to Simon J. Reisterer, secured by a mortgage on a house and lot owned by her in Janesville. Reisterer testified that he thought the note ran one year, but he was not positive. On the other side, the defendant and one Gaulke, his uncle, testified that the note ran three years. Mrs. Buege testified that the note contained a provision that it could be paid at any time, but both *Falter* and Gaulke denied this. The mortgage was duly recorded September 13, 1897. The loan was negotiated through one Max Phennig, who seems to have been a real estate agent or money loaner, or both, then living at Janesville, but who disappeared mysteriously in October, 1899, and has never been heard of since. The defendant *Falter* purchased the note and mortgage May 21, 1898, and on the 23d of the same month a formal assignment thereof was duly recorded. *Falter* testified that he received the note and mortgage from Phennig, and that he took it home and placed it in a bureau drawer with other papers, to which drawer he testified that he alone had a key. He was a married man, living in Janesville with his wife, but was an engineer upon the Chicago, Milwaukee & St. Paul Railway, running a locomotive in the northern part of the state of Wisconsin, and was absent from home for considerable periods of time. He testified that he last saw the papers in the drawer when he was at home on the 15th of September, 1899. On the 27th of September, 1899, Emily Buege sold the mortgaged house and lot to the plaintiff *Schumacher*, the sale being concluded through the agency of Phennig, and at his office; and it appears that, at the time the sale was finally concluded, Phennig had the *Falter* note and mortgage in his possession at the office. The evidence shows, without contradiction: That Phennig procured the note and mortgage in the latter part of September from Mrs. Falter. That he went to *Falter's* house, and asked Mrs. Falter for the Buege mortgage. That she said she knew nothing about it; that *Falter* had the key of the

drawer containing his papers, and she did not. That Phennig then said he must have the papers, and that she took some keys, and went upstairs, came back with the papers, and read them over, and, when she came to the Buege note and mortgage, he said it was all right, and took them. *Falter* was then away from home on business, and remained away until November 4th. He testified that he knew nothing about Phennig's taking the papers until he received a letter from his wife in the latter part of October, and that he came home November 4th. There was some testimony on the part of plaintiff to the effect that *Falter* at one time said that Phennig had the note and mortgage part of the time, and he had it the rest of the time, but *Falter* denied this. The note and mortgage being present in Phennig's office at the time of *Schumacher's* purchase, Phennig assumed to have authority to receive payment for the same, and took the amount of the principal and interest out of the consideration money for the property, and then burned up the note and mortgage, with Mrs. Buege's consent, but he never accounted to *Falter* for the money received. A proper demand was made on behalf of *Schumacher* for the discharge of the mortgage before the action was brought, but *Falter* refused to discharge the same on the ground that the mortgage had never been paid, and that he had been advised by counsel not to discharge it. The plaintiff claimed that the testimony was sufficient to show that Phennig was *Falter's* agent to receive pay for the note and mortgage, or at least that he had apparent authority to receive such pay. Both parties moved for the direction of a verdict, and both motions were overruled, and the court, on its own motion, submitted a special verdict to the jury, which, with the answers thereto, was as follows:

"1. Was the note in question in this suit payable, by its terms, in one year from date? Yes. 2. Was the note in question in this suit payable, by its terms, in three years

from date? No. 3. Was Max Phennig authorized by the defendant to receive payment of the note in question? Yes. 4. Was the wife of the defendant authorized by him to deliver the note in question to Max Phennig? No. 5. Was there a stipulation in the note in question permitting payment at that time? No."

Upon motion before judgment, the court set aside the answers to questions 1, 2, and 3, as not sustained by the evidence, and thereupon entered judgment dismissing the complaint, and from this judgment the plaintiffs appeal.

*J. J. Cunningham,* attorney, and *C. E. Pierce,* of counsel, for the appellants.

For the respondent there were briefs by *Whitehead & Matheson,* and oral argument by *A. E. Matheson.*

WINSLOW, J. This was an action brought to recover the penalty provided by sec. 2256, Stats. 1898, for failure to discharge a mortgage which has been fully paid. Although that section does not provide, in terms, that the failure to discharge must be a wilful or malicious one, it is very evident that it was not enacted to punish honest mistakes. A statute in almost the identical language of our section has been construed many times by the supreme court of Michigan; and the substance of the decisions in that state is that where there is no intentional wrong in the refusal to discharge, but, rather, a reliance in good faith upon some supposed legal right, the penalty will not be imposed, even though the supposed right may be found not to exist. *Myer v. Hart,* 40 Mich. 517; *Huxford v. Eslow,* 53 Mich. 179; *Parkes v. Parker,* 57 Mich. 57. In *Burrows v. Bangs,* 34 Mich. 304, Mr. Justice COOLEY disposes of a claim to recover such a penalty as follows:

"But as there has been an honest difference between these parties regarding their rights, we do not think the defendant is subject to the statutory penalty for not discharging the mortgage."

The construction so given the statute is very reasonable, and we do not hesitate to adopt it. The merest reading of the testimony in the present case shows that the defendant, in refusing to discharge, was acting in the honest belief that his mortgage was still unpaid, and under the advice of counsel. Whether it has been paid or not depends upon a number of facts not made clear by the testimony in this case, and which should properly be determined either in a foreclosure, or in some other appropriate action. The defendant's motion that a verdict be directed in his favor should have been granted. Under this view of the case, the finding of the jury cannot be held as *res adjudicata,* or as settling any of the questions at issue between the parties regarding the supposed payment of the mortgage. It was not a case where any findings of fact should be made after it appeared that the defendant's refusal was made honestly and in good faith. The judgment will be affirmed, because ultimately right, although the findings of the court and jury on which it was based are set aside as improperly made, in order that, in future litigation between the parties, neither side may be in any way affected by them.

*By the Court.*—Judgment affirmed.