## AMERICAN NAT. BANK OF OKLAHOMA CITY v. JORDEN et al.

No. 16450—Opinion Filed June 1, 1926.

Rehearing Denied Jan. 25, 1927.

**1. Appeal and Error—Review—Sufficiency of Evidence in Equity Case.**

This court will weigh the evidence in a case of purely equitable cognizance, but will not reverse the same, unless the judgment is clearly against the weight of the evidence.

**2. Same—Review in Law Case.**

A judgment of the court based upon the verdict of a jury, in a law action. will not be reversed upon appeal, if there is any competent evidence which reasonably tends to support the verdict of the jury.

**3. Set-Off and Counterclaim—Submission of Issue to Jury.**

If the defendant files an answer in an equitable action, pleading a set-off for the recovery of money, the issues of fact involved in the set-off should be submitted to a jury for its determination.

**4. Mortgages—Penalty for Failure to Release—Nonliability of Mortgagee Refusing in Good Faith.**

A mortgagee who, in good faith, believes that he has substantial grounds for contesting the fact of payment and refuses to release the real estate mortgage of record is not subject to the penalty provided by our statute for refusal to release a real estate mortgage. The gist of an action to recover the statutory penalty for refusal to release a mortgage is the willful wrong of the mortgagee without justification in law in his refusal to release a real estate mortgage.

**5. Bills and Notes—Maker Estopped by Renewal Note to Urge Want of Consideration.**

Where a note is executed or to become effective upon the happening of a certain contingency, and after the time in which the contingency was to have happened the maker of the note pays interest thereon and procures an extension of time within which to pay same and subsequently executes a renewal note therefor, the said maker is estopped from asserting the invalidity of the note for want of consideration.

### 6. Disposition of Cause.

Record examined; held, to be sufficient to deny the foreclosure of the mortgage; further held, to be sufficient to support the money judgment in favor of D. J. Jorden. The record is insufficient to support judgment in favor of the defendants for penalty for refusal to release real estate mortgage.

(Syllabus by Williams, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Oklahoma County; Wm. H. Zwick, Judge.

Action by American National Bank for a debt and foreclosure of real estate mortgage against Mary Carroll Jorden and D. J. Jorden. First National Bank of Oklahoma City made party defendant later. Judgment against American National Bank. Judgment in favor of defendants on cross-petition. American National Bank brings error. Affirmed in part and reversed in part.

Thos. H. Owen and Wilbur J. Holleman, for plaintiff in error.

S. A. Horton and Crawford D. Bennett, for defendants in error.

Opinion by WILLIAMS, C. A coal company owned and operated certain coal mining properties in the vicinity of McCurtain county, Okla. Some Ohio people held first liens against the property, and apparently acquired the same by sale on foreclosure proceedings. The Ohio people entered into a sale of the property to D. J. Jorden, subject to the indebtedness then held against the property. D. J. Jorden came to Oklahoma, took charge of the property, and commenced its operations. Jorden carried the coal company's account with the American National Bank of Oklahoma City, which advanced credit to the mining company then owned and managed by Jorden, until the indebtedness reached a considerable sum. A receivership was instituted in the federal court for the Eastern district for the property, and the property of the company was operated for sometime by the receiver under the direction of the court. The property was later sold in the receivership proceedings, and was purchased by the stockholders of the American National Bank of Oklahoma City, subject to the indebtedness held against the property by the Ohio people.

The company was re-incorporated after the receivership proceedings, and the stock was held by defendant stockholders and employes of the American National Bank and the First National Bank, which had also incurred indebtedness in connection with the mining property. It was said by the American National Bank's officers that the stock was held by the defendant stockholders and employes of the two banks as a matter of convenience. It was the desire of the American National Bank that the stock be under its control and direction, so that a prompt sale of the property could be made if a purchaser was found. Apparently the American National Company, a subsidiary corporation of the American National Bank was also involved in the transactions, but the stockholders of the American National Company were the same as the American National Bank. The American National Company was incorporated for the purpose of handling transactions that were not desirable to be handled by the American National Bank.

D. J. Jorden continued the management of the property after its re-organization, and during the time that the stockholders and employes of the two banks owned and held the stock. The controversy, and its several angles involved between the American National Bank and the Jordens, had its inception in a real estate mortgage foreclosure proceeding commenced by the former against the latter. The trial of the cause resulted in judgments for the Jordens, and the American National Bank has appealed the cause here for review.

Several proceedings had in the trial of the cause are assigned as error for reversal. It would serve no useful purpose to follow the controversy and contentions of the parties minutely; the effect would be to cloud the real questions between the parties.

The receiver in the federal court proceedings issued receiver's certificates to the extent of about $50,000, which were purchased in three equal parts by the Ohio people, the American National Bank, and another party. The property was thereafter managed by D. J. Jorden, apparently under the direction of the officers and stockholders of the two banks, for the benefit of the American National Bank and other creditors who held liens and claims prior to the bank. At one of the later stages in the operation of the coal company, D. J. Jorden informed the president of the American National Bank that he needed $5,000 or $6,000 to meet the current pay roll. Apparently the Jordens had shipped sufficient coal to meet the pay roll, but had not received returns. The president of the bank informed Jorden that he would not advance any more money in the operation of the mining property regardless of consequences to all parties. Apparently Jorden

was interested in the successful operation of the property, so that he might receive returns by way of compensation for the period of time he had managed the property. The bank had an equal interest for the purpose of recouping against the indebtedness already incurred in advancing money for the operation of the company. At this stage of the proceeding the several parties referred to above then owned and controlled the stock of the company. Jorden advised the president of the American National Bank that he had a party in view, in Chicago, to whom he might sell the property for a sum of money that would pay the bank and yield a return to Jorden. The president of the bank, according to the testimony, told Jorden that he would give him an option on the property for a certain cash payment and future payments, provided Jorden would indemnify the bank against loss in coal production and sales for the current month. In other words, the substance of the Jordens' contention is that the bank would give them an option if he was able to assure the bank that coal production and sales would equal the pay roll for the current month.

The option entered into between D. J. Jorden and the banks was in the form of a letter addressed to D. J. Jorden and signed by the American National Bank and the First National Bank. The option commences in the following language:

"In consideration of your putting up security to cover the current pay roll of the Blue Ridge Coal & Coke Company, we hereby grant to you an option, good for 38 days from this date, and no longer," etc.

At the time the option was given, Mrs. Mary Carroll Jorden, the wife of D. J. Jorden, held the title to their home situated in Oklahoma City. D. J. Jorden and his wife executed and delivered to the American National Bank a real estate mortgage on the home which is sought to be foreclosed in this action. The note and mortgage provided on their face for the unconditional payment of $5,000. D. J. Jorden, pursuant to the rights and privileges given to him by the option, quoted in part above, went to Chicago to endeavor to sell the property, which he failed to do. It is the contention of the Jordens that the real estate mortgage was given pursuant to the indemnity provision provided by the option. On the other hand, it is the contention of the American National Bank that the mortgage was given to secure a loan to D. J. Jorden, which was placed to his credit and the proceeds were used by him, Jorden, in the nature of a loan to the coal company. The testimony of all the parties

is silent as to any indemnity provided for the satisfaction of the current pay roll, unless the mortgage was in fact for this purpose. The Jordens filed their separate answers, in which it was set forth that the mortgage was made pursuant to the option, and that sufficient coal was produced and sold from the mining property to meet the pay roll for the month in question; that no other liability accrued on the mortgage by reason of this fact in favor of the bank and against these defendants. The defendants prayed for the cancellation of the real estate mortgage, and that title be quieted in Mrs. Jorden. D. J. Jorden pleaded a set-off in his answer for the recovery of the sum of about $2,300 against the American National Bank for salary as manager of the coal property. During the time the officers and stockholders of the banks held and controlled the stock of the mining company, it was alleged by Jorden that he was employed by the president of the American National Bank to continue the management and operation of the property at the sum of $500 per month for salary.

Mrs. Jorden demanded the release of the mortgage in question after the foreclosure proceedings were commenced, which was refused by the bank. She pleaded a set-off in the nature of a penalty for the refusal of the bank to release the mortgage. The issues of fact involved in the claims between and among the parties were submitted to the jury. The jury found the issues of fact in favor of the Jordens on the question that the real estate mortgage was executed and delivered pursuant to the indemnity provision contained in the option. The effect of this finding was to deny a foreclosure of the mortgage against the Jordens.

The jury returned a verdict in favor of D. J. Jorden and against the bank for salary in the sum of $2,000. The jury also returned a verdict in favor of Mrs. Jorden for the sum of $2,000 as a penalty for the failure of the bank to release the mortgage. The bank urges that the court committed reversible error in sending the issues of fact involved in the execution of the mortgage and the contention of the Jordens to the jury. That part of the answer of the Jordens, which pleaded that the mortgage was executed and delivered pursuant to the indemnity provision of the option contract, was in the nature of an equitable proceeding for the cancellation of the mortgage, and quieting title to the real estate in Mrs. Jorden. It was triable to the court in the nature of an equitable proceeding. While the court submitted this issue of fact to the jury, its verdict was not binding on the court. The entry of

judgment for the Jordens on this question had the effect of adopting the verdict of the jury as the judgment of the court on this issue. The verdict of the jury in this respect was not binding upon the court, and it might have disregarded the verdict and rendered judgment for the bank on this issue. As the court adopted the verdict of the jury in this respect as its judgment, the judgment will not be reversed unless it appears to be clearly against the weight of the evidence on this issue. It was said in the case of Costello et al. v. Sims et al., 106 Okla. 94, 233 Pac. 449:

"In equitable actions where a jury is selected to pass upon any issue of fact, its verdict is merely advisory and may be adopted or rejected by the court, since it is the duty of the court to consider all the evidence and to render judgment in conformity with equitable principles and the rights of the parties. For this reason it is a matter of judicial discretion as to what matters of fact germane to the issues shall be submitted to the jury, and error is not predicable upon an instruction given nor upon instructions refused in an equitable action."

We have examined the evidence in respect to this particular issue, and find that it is not against the clear weight of the evidence in so far as the foreclosure proceedings and judgment in favor of Mrs. D. J. Jorden are concerned. Therefore, the submission of the question to the jury would not be more than technical error, if any. The error, if any, was harmless and cannot work a reversal of the cause in this respect.

It was said in the case of Potter v. Ertle, 80 Okla. 67, 194 Pac. 201:

"In equitable actions, the findings of the trial court should stand unless it appears that his findings are clearly against the weight of the evidence."

Section 532, C. O. S. 1921, reads as follows:

"Issues of law must be tried by the court, unless referred. Issues of fact arising in actions for the recovery of money, or of specific real or personal property, shall be tried by a jury, unless a jury trial is waived, or a reference be ordered as hereinafter provided."

The counterclaim of D. J. Jorden for the recovery of salary was an action for the recovery of money, and the issue of fact involved therein was properly submitted to a jury. A judgment of the court based upon the verdict of a jury, in a law action, will not be reversed on appeal, if there is any competent evidence which reasonably

tends to support the verdict of the jury. Young v. Eaton, 82 Okla. 166, 198 Pac. 857.

There is sufficient evidence to support the finding of the jury in favor of Jorden for the recovery for salary as manager of the coal company. However, in this connection, it is the contention of the American National Bank that judgment for the salary should not have gone against the American National Bank; that it was the debt of the coal company and not that of the bank. But it must be borne in mind that the property was being operated during all these periods of time for the benefit of the American National Bank, which held indebtedness against the property to the extent of several thousand dollars. After the coal company was re-organized, the stock was issued and held by the stockholders and officers of the American National Bank and the First National Bank. It is apparent from the record that Jorden operated the property at the direction of the president of the American National Bank, and that the coal company was subservient to the wishes of the bank and under the complete control and domination of the latter. The president of the American National Bank, according to the evidence of Jorden, desired the latter to continue in the operation of the property after the second receivership and after the property came under the control of the two banks. Apparently, the proceeds from the mining operations went to the credit of the coal company in an account carried in the American National Bank, and that all sums of money received from the operations of the property went to satisfy indebtedness of the American National Bank and those creditors who held claims prior to the bank.

The American National Bank was the dominant and controlling factor in the operation and conduct of the property and the corporation did not exercise its will in the conduct and operation of the property. Therefore, according to this record, it was proper for judgment to go against the bank for the salary, as Jorden operated the property for the agreed salary of $500 at the request and under the direction of the officers and stockholders of the American National Bank.

The bank assigns as error the admission of testimony of Mrs. Jorden of statements made to her by her husband in relation to the execution of the mortgage. D. J. Jorden testified that the president of the American National Bank suggested that he advise his wife that the mortgage was for the purpose of indemnifying the bank against any loss on account of failure of coal sales to

meet the current payroll. Mrs. Jorden testified that such statements were made to her by her husband, and that she would not have executed the mortgage except upon those representations. The trial court admitted the testimony on the theory, apparently, that D. J. Jorden was acting as agent for the bank. We think that D. J. Jorden was not acting in this respect as agent for the bank, but was acting in his own behalf. It was of no concern to the bank as to what indemnity was paid, if it were of sufficient value to meet the conditions provided by the option. But this would not have been error in respect to the Jordens, for the reason that Jorden was merely stating the contents of the optional contract. It would not have been error if the written option had been placed in Mrs. Jorden's hands, and she had read the same, for her to have gone on the stand and testified that the language of the option induced her to sign the contract. However, what is said in this respect goes to the contention made by the defendant that the mortgage was executed pursuant to the indemnity provision of the option contract. According to the contention of D. J. Jorden in this respect, he was merely stating to her the contents of the written option; whether this statement to her came at the direction of the president of the American National Bank or of his own volition is immaterial. We think the language of the option justified the contention of the defendants that the mortgage was made pursuant to the provision of the written contract. The language of the option in this respect justified the submission of this issue of fact to the jury.

It is the further contention of the bank that the defendants are estopped to submit the contention that the mortgage was executed for the purpose of an indemnity for the following reasons: (a) That D. J. Jorden made interest payments from time to time on the mortgage; (b) that the Jordens executed a renewal note to cover this same indebtedness; (c) that D. J. Jorden entered into a subsequent contract which recited that he had advanced to and loaned to the coal company $5,000. In reference to the payment of interest and the execution of the contract, these matters would not affect Mrs. Jorden, as she was not a party to the same; what D. J. Jorden did would not affect Mrs. Jorden unless it was shown that D. J. Jorden acted with her knowledge or that she acquiesced.

Regardless of whose story is believed in respect to whether the American National Bank paid to Jorden the $5,000 consideration for the original note, Jorden, by his conduct, thereafter became estopped to claim that said note was without consideration and was invalid. The original note was executed March 29, 1921, and matured 60 days from its date. Interest was paid on the note at different times and extended from time to time by Jorden. On July 28, 1921, Jorden entered into a written contract to purchase the mining properties from H. P. Johnson, trustee of the American National Bank, and the other holders of securities of the mining company, and one of the provisions of the contract was that:

"It is further agreed that * * * you (D. J. Jorden) may pay out of the earnings of the company after all monthly obligations have been paid * * * the $5,000 which you have heretofore loaned the company."

The $5,000 referred to in the contract is the amount which the bank alleges it let Jorden have on his note of March 29, 1921, and which he loaned to the company. By this contract Jorden solemnly admitted the $5,000 item in question, and this alone would estop him from denying the validity of the note.

In addition to the contract, Jorden paid interest on the original note from time to time after its maturity, and with full knowledge of all the facts, and his conduct in that regard would estop him from denying the validity of the note. The original note was afterwards renewed by the giving of the note sued on, and his conduct in that regard estops him from asserting the invalidity of the note for want of consideration. Bank of Union v. Hungerford, 111 Okla. 225, 239 Pac. 252; Western Silo Co. v. Pruitt, 94 Okla. 154, 221 Pac. 106; Farmers State Bank v. Harrington. 98 Okla. 293, 225 Pac. 705; Campbell v. Newton, 52 Okla. 518, 152 Pac. 841.

In view of the foregoing, the mortgage sought to be foreclosed on the individual property of Mrs. Jorden, her homestead, is void, and the same should be vacated and set aside.

The entire record does not show that the American National Bank acted in bad faith in refusing to release the mortgage. There is sufficient ground for the bank to have contested the contention of the defendants in this respect. We think the court should have refused to submit this question to the jury. In the case of Smith v. Colson, 31 Okla. 703, 123 Pac. 149, it is said:

"Under statutes the same or similar to the one upon which the plaintiff founds his right of action, the rule, supported by the weight of the authorities, is that, because of the penal character of such statutes, they should be strictly construed and a mortga-

gee not rendered liable thereunder who, in good faith, having, as he may believe, real, substantial grounds for contesting the fact of payment, refuses to make an entry of satisfaction of the mortgage. Among the authorities so holding are the following: Burrows v. Bangs, 34 Mich. 304; Parkes v. Parker, 57 Mich. 57, 23 N. W. 458; Scott v. Field, 75 Ala. 419; Schumacher v. Falter, 113 Wis. 563, 89 N. W. 485; Lane v. Frake, 70 Ill. App. 303; Parkhurst v. First National Bank of Clyde, 53 Kan. 136, 35 Pac. 1116; 1 Jones on Mortgages (6th Ed.) sec. 991; 27 Cyc. 1428.

A similar question was again before this court in the case of First State Bank of Indiahoma v. Carr, 72 Okla. 262, 180 Pac. 856, wherein it was said:

"There are a number of cases in our court holding that if there is a dispute or a controversy between the parties as to the amount due on the mortgage, and it is claimed in good faith that a balance is due, no liability for damages arises for failure to release"—and cases cited.

There is not sufficient testimony to support the judgment for penalty in favor of the defendants. However, a separate verdict of the jury was returned in this branch of the case, and the result does not affect the judgment.

There was no reversible error committed in relation to the judgment denying foreclosure of the mortgage, nor in the judgment in favor of D. J. Jorden for $2,000 as salary in the management of the coal property. In this connection the bank complains of instruction No. 10, given to the jury. The substance of the instruction is that if the jury found that the banks were the owners of the capital stock of the coal company and had exclusive control and operation of the properties, and employed D. J. Jorden to act as their manager, it should return a verdict for the amount of the salary found to be due Jorden. A phase of this case already considered disposes of this contention adversely to the bank.

The record shows that the stockholders and employes of the two banks owned the stock, and that the American National Bank controlled and directed the management of the coal company property. There seems to be but little dispute in relation to the matter of the employment of D. J. Jorden at a salary of $500 per month, by the president of the American National Bank, to manage the property. We think under the facts in this case the instruction did not result in harm to the bank.

The judgment in relation to denying foreclosure of the mortgage and the judgment in favor of D. J. Jorden for $2,000 for sal-

ary is affirmed. The judgment in favor of D. J. Jorden and against the bank upon the note sued upon is reversed, with directions to the trial court to render judgment upon said note in favor of the bank and against D. J. Jorden in the sum of $5,000, with interest thereon according to the tenor of said note, and said judgments shall offset each other. The judgment in relation to the penalty is reversed and remanded, with direction that the court dismiss the set-off for the penalty.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 900, §2869. (2) 4 C. J. p. 853, §2834. (3) 35 C. J. p. 177, §59. (4) 27 Cyc. p. 1426. (5) 8 C. J. p. 444, §658. (6) 4 C. J. p. 1180, §3214. See under (1, 2) 2 R. C. L. p. 202; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 91; 5 R. C. L. Supp. p. 81.