M. KASNER, Plaintiff in Error,

v.

G. G. ANTENE and Alma Antene,
Defendants in Error.

No. 42754.

Supreme Court of Oklahoma.

March 2, 1971.

Rehearing Denied May 4, 1971.

Thomas J. Lee, Forest N. Simon, Oklahoma City, for plaintiff in error.

John Connolly, Oklahoma City, for defendants in error.

BLACKBIRD, Justice.

The parties appear here in the same order as they appeared in the trial court, and will hereinafter be referred to by their trial court designations or proper names.

Plaintiff instituted this action to recover judgment against defendants, who are husband and wife, on four promissory notes executed by them in April, 1957, payable to his order in principal amounts totaling $18,750.00, due one year later.

After defendants, by an amended answer, pleaded certain facts tending to indicate that they had received no consideration from plaintiff for their execution and delivery of the notes, but had done this pursuant to a plan that plaintiff, an Oklahoma City jewelry store operator, and the defendant, G. G. Antene, who had operated an insurance claims adjusting business, next door, for a number of years, had orally adopted to acquire stock in an insurance company, hereinafter referred to as "Amers", plaintiff filed a reply in which he, too, alleged that the notes were executed and delivered pursuant to an oral agreement between him and said defendant.

According to the allegations of defendants' amended answer, the substance of this oral agreement was that plaintiff would pay Amers $35,000.00, for which said insurance company would issue sufficient shares of its stock to equal a one-half ownership of the company, and that Antene would then join plaintiff in operating the company, and a sufficient amount of said stock would be sold by them to reimburse plaintiff's $35,000.00; and that defendants would never be required to pay the amounts of the notes.

After pretrial, waiver of a jury, and trial by the court, judgment was rendered for defendants.

■ For the reasons hereinafter indicated, we have determined that the arguments submitted in plaintiff's present appeal from said judgment show insufficient ground for disturbing it.

According to the evidence introduced at the trial, it is undisputed that defendants received no money for their execution and delivery of the notes and that their total principal amount is one-half of a $37,500.00, in return for whose advancement to Amers, said insurance company agreed to issue sufficient shares of its stock to equal a one-half ownership of the company. The company's offer to do this was made at a meeting of its stockholders attended by plaintiff and Antene, after an Examiner for the State Insurance Board had issued an ultimatum to Amers that said company would be placed in the hands of a receiver, unless sufficient funds were acquired by its treasury to pay outstanding claims against it, evaluated in Amers' attorney's office as totaling $75,000.00, and plaintiff had heard, and told Antene, or vice versa, that Amers' situation might afford an investment opportunity to be investigated by attending said stockholders' meeting. At said meeting, Amers' stockholders agreed that if plaintiff and/or Antene could procure for the company's treasury cash equal to one-half of this amount, they (the stockholders) would pay into said treasury the other $37,500.00 necessary to satisfy these claims, and thereafter would issue to plaintiff and Antene shares of stock in said company equal to the shares it then had outstanding.

After Antene, whose insurance adjusting business netted him an income of no more than $500.00 or $600.00 per month, made no effort to raise any part of the $37,500.00, plaintiff purchased seven $5,000.00 cashier's checks made payable to his own order, and, when he had endorsed them, the checks were delivered to Amers' office, where he was credited with such payment. The subject promissory notes were executed and delivered to plaintiff by defendants contemporaneously with this payment.

By the due date of the subject notes, in April, 1958, it was discovered that the funds contributed to Amers' treasury by plaintiff's payment, together with the matching funds contributed by the company's stockholders, were insufficient to satisfy the aforementioned outstanding claims, and that the true total of such claims amounted to $120,000.00, rather than the smaller sum which had been represented, as aforesaid. By July 12, 1958, it had been discovered that Amers was still insolvent, despite payment of many of those claims, and that, under the State Insurance Board's mandate, said company could still not issue the stock contemplated in its above-described agreement with plaintiff and Antene, who, by that time, had become the company's Treasurer and President, respectively. At a meeting of said company's Executive Committee on that date, it was determined that, in lieu of its issuance of the aforementioned stock, it would issue a "Surplus Fund Certificate" in the amount of $35,000.00, which would not add to the company's liabilities, and which, by its terms, would apparently become redeemable only when the company had accumulated that much in surplus funds.

When it became apparent that the Surplus Fund Certificate would not become redeemable before the five-year statutory limitation for bringing suit on the subject notes had expired, plaintiff made demand upon defendants to pay them. On March 10, 1962, defendant paid $25.00 on each of the four notes, and plaintiff agreed, according to Antene's undisputed testimony, that "he wouldn't sue, that we would see what we could work out with" Amers.

After plaintiff, in support of his causes of action for recovery on the four notes, had introduced the notes in evidence and had testified as to their execution and delivery, among other things, he was interrogated, on cross-examination, about the oral agreement with defendant Antene, in connection with which the notes were executed and delivered. Over the continuing objections of his counsel to all such ques-

tions, plaintiff virtually admitted that the notes' total principal amount, $18,750.00, represented one-half of the value of the stock, which, after its contemplated issuance by Amers, he and Antene agreed would be sold to pay off the notes and thus return to plaintiff the $35,000.00 he had advanced for Amers' treasury.

■ The trial court's overruling of his counsel's objections to plaintiff's such interrogation, by defense counsel, comprises the basis of one of plaintiff's first complaints in this appeal. He argues, in substance, that the trial court's admission of evidence concerning this oral agreement, which tended to contradict the terms of the notes sued upon, as evidences of *absolute* indebtedness, constituted a violation of the parol evidence rule and of our Statute, whose official citation is Title 15 O.S. 1961, § 137. We do not agree. As hereinbefore indicated, the last pleading plaintiff filed in the case alleged the existence of such an oral agreement; and, in our opinion, this estopped him from objecting—on the ground that it violated the parol evidence rule—to the elicitation of evidence as to said agreement's terms. See In Re Boyd's Estate, 394 Pa. 225, 146 A.2d 816, 821; Ward v. Zeigler, 285 Pa. 557, 132 A. 798 (cited opposite footnote 22 in the Annotation at 71 A.L.R. 548, 556), and the cases cited at 31 C.J.S. Estoppel § 118b, footnote 82. This conclusion obviates the need for discussing the parties' arguments concerning the application of Spradlin v. American Travelers Insurance Company, Okl., 376 P.2d 323, or Land v. Lynn, Okl., 331 P.2d 942, to the present case. This Court has consistently followed the rule, under our harmless error Statute, that if a ruling or judgment of the trial court is correct, the reasons given therefor are immaterial. City of Tulsa v. Thomas, 89 Okl. 188, 214 P. 1070.

■ Another reason plaintiff suggests for reversing the judgment denying him recovery on the notes is the trial judge's conduct toward him, while he was testifying.

He points to an admonition given him during his cross-examination by defense counsel, in which the judge expressed his opinion that the witness was being evasive in his answers to certain questions the attorney propounded that were designed to elicit from the witness his admission that, under the parties' oral agreement, the subject notes were to be paid by funds derived from the sale of Amers stock. Plaintiff cites no authority showing this abused a trial court's proper discretion in such matters; and, after carefully examining the record, we are of the opinion that the trial judge's remarks were quite appropriate and constituted no abuse of discretion or error of any character.

■ In another argument, plaintiff characterizes the aforementioned Surplus Fund Certificate as a "benefit" defendants (finally) received from the $35,000.00 of his money that was advanced to Amers. He claims this certificate was issued by Amers "upon action initiated in the first instance by Antene." Plaintiff infers that his money was paid to Amers for Antene's benefit and suggests that this payment was a sufficient consideration to support the promissory notes in question, citing Doxy v. Exchange Bank of Perry, 19 Okl. 183, 92 P. 150. We do not think this argument, and the rule followed in the cited case, are applicable. Here, the evidence fails to show that plaintiff, as payee of the subject notes, suffered any "detriment" by reason of Amers' issuance of the Surplus Fund Certificate.

■ In another argument, plaintiff says, in substance, that even though the defenses against his recovery on the questioned notes might have been good, before the partial payment of $25.00 on each of them in 1962, this payment constituted an acknowledgment that defendants were indebted to him on the notes and was a waiver of any such prior defenses, citing Eash v. Pence, 121 Okl. 7, 246 P. 1091, and American National Bank v. Jorden, 123 Okl. 151, 254 P. 706. Neither of these cases is in point

here. We have carefully examined the evidence as to the twenty-five-dollar credits and can find nothing therein to support characterizing them as a ratification of the notes or as an election to waive a "voidable" defense against them, as in Pence, supra, or as a renewal of them, as in Jorden, supra. The evidence does not designate these sums as payments on either the principal amounts appearing on the faces of the notes or of the interest prescribed thereon.

The reasonable inferences from Antene's testimony is that the questioned notes were signed for plaintiff merely because he insisted that in the event of his (Antene's) death, or a claim by his heirs or creditors that might imperil his rights in the future stock issue contemplated in the agreement with Amers, plaintiff would have something in writing with which to defend himself, and that the twenty-five-dollar credits endorsed thereon a short time before expiration of the statutory five-year limitation prescribed for suits on promissory notes was to prevent such written protection from appearing stale or dormant, and to induce plaintiff to forego carrying out his threats to sue, until a way could be found for Amers to reimburse the outlay evidenced by the notes. At least this factual hypothesis cannot be said to be contrary to the evidence. And we think that, on its basis, defendants were not estopped, by such total payment of $100.00, from maintaining their defense to the notes. There is no claim that plaintiff suffered any detriment, or gave anything in return, for this payment that furnished a consideration for the notes, capable of changing their original character into proof of valid obligations; albeit the payment was a fact to be taken into consideration on the question of whether they were supported by a consideration. In this connection, see 10 C.J.S. Bills And Notes § 485a, pp. 1052, 1053, and the cases cited opposite footnotes 32 and 37.

Plaintiff also says, in substance, that if we determine that the trial court did not err in holding that the notes did not represent valid obligations and therefore defendants were not indebted to him *prior* to the time Amers issued the aforementioned Surplus Fund Certificate, *when Amers did issue* the certificate in the names of both Antene and himself, then Antene immediately became indebted to plaintiff in the amount of one-half of the $35,000.00 of plaintiff's money that had been paid into Amers' treasury. We find no merit in this argument. According to Antene's testimony, he never claimed any real interest in this certificate, and it was issued in both of their names only because plaintiff refused his demand that the questioned promissory notes be surrendered or cancelled.

Plaintiff says another theory he advanced to the trial court for recovering the principal amount of the notes is that this sum represents the consideration he gave under an agreement to enter into a joint venture, which failed to attain its goal, when the Amers stock could not be issued as the parties' said agreement contemplated. He quotes the rules announced in paragraphs 2 and 3 of the syllabus in Tulsa Opera House Co. v. Mitchell, 165 Okl. 61, 24 P.2d 997, as supporting this theory. These rules have no application to the present case, if for no other reason than that the evidence here fails to show that defendants have failed to perform, or have only partially performed, any obligation they had to plaintiff under any agreement he had with them, or either of them.

As we have found no valid ground for reversing it in any of plaintiff's arguments, the judgment of the trial court is hereby affirmed.

DAVIDSON, V. C. J., and WILLIAMS, JACKSON, IRWIN, LAVENDER, and McINERNEY, JJ., concur.