**MUNN et al. v. MID-CONTINENT MOTOR SECURITIES CO.**

No. 12925—Opinion Filed June 24, 1924.

### 1. Trial—Demurrer to Evidence—Consideration.

It is the settled rule that a demurrer to the evidence admits every fact which the evidence in the slightest degree tends to prove, and all inferences or conclusions that may be reasonably and logically drawn from the evidence. This court will consider as withdrawn all the evidence which is most favorable to the party demurring. If the inference to be drawn from the evidence is a reasonable one, although not a necessary one, the court will not invade the province of the jury by taking from it the right to pass on the facts to be deduced from such inference.

### 2. Interest—Rates—Statute.

Section 5097, Comp. Stats. 1921, provides: "The legal rate of interest shall not exceed six per cent. in the absence of any contract as to the rate of interest, and by contract parties may agree upon any rate not to exceed ten per cent. per annum. Said rates of six and ten per cent. shall be, respectively, the legal rate and the maximum contract rates of interest."

### 3. Usury—Penalty—Statute.

Section 5098, Comp. Stats. 1921, provides: "The taking, receiving, reserving or charging a greater rate of interest than is provided by the preceding section shall be deemed a forfeiture of twice the amount of interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case a greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover from the person, firm, or corporation taking or receiving the same in an action in the nature of an action of debt twice the amount of the entire interest paid."

### 4. Same—Definition of Usury.

Usury is the taking of a greater premium for the use of money loaned than the law allows, and if the lender takes, receives, reserves, or charges a greater rate than 10 per cent. per annum, he forfeits twice the amount of the interest which has been agreed to be paid thereon; and whatever the form of the transaction may be, it is usury if the rate of interest taken, charged, reserved, or received is unlawful.

### 5. Same—Evasion of Usury Law.

It is the uniform policy of the courts not to permit an act forbidden or penalized by statute to be done either directly or indirectly. This court will not uphold any shift or device by which the lender may receive more than 10 per cent. per annum for the use or forbearance of money.

### 6. Same—Involuntary Payment of Usury.

If the interest is paid, either voluntarily or from the proceeds of the sale of the borrower's property it cannot logically be said that the same was not paid by the borrower. The law does not require a showing that the interest was voluntarily paid.

### 7. Accord and Satisfaction—Requisites.

It is a settled rule that, if the compromise agreement is accepted in satisfaction of the original demand, and the agreement to accept is based on sufficient consideration, the original demand is extinguished, and cannot be the foundation of an action, and it makes no difference whether the original demand was on tort or on contract; but the promise or agreement will not operate as a satisfaction of the original debt or demand, unless the claimant intended to accept it as such, and such intention must be alleged and proven.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tulsa County; W. B. Williams, Judge.

Action by Maude B. Munn and M. J. Munn against the Mid-Continent Motor Securities Company for the recovery of $4,585.50, attorney's fees and costs. Judgment for defendant, and plaintiffs bring error. Reversed.

W. T. Hunt, for plaintiffs in error.

Reeves & Russell, for defendant in error.

Opinion by THOMPSON, C. This action was commenced in the district court of Tulsa county, Okla., by Maude B. Munn and M. J. Munn, plaintiffs in error, plaintiffs below, against the Mid-Continent Motor Securities Company, defendant in error, defendant below, for the recovery of $4,585.-50, double the amount claimed to have been withheld by the defendant in error in violation of the usury statute of this state, together with reasonable attorneys' fees and their costs. The parties will be referred to as plaintiffs and defendant as they appeared in the lower court.

Plaintiffs, in their petition, allege that on April 6, 1920, they owed the defendant the sum of $23,500 on promissory notes made, executed and delivered by them on said date to the defendant, bearing interest at the rate of ten per cent. per annum, due May 6, 1920; that said notes were secured by mortgage on 13 Standard 3-ton FWD trucks; that one of the trucks was sold for $2,750, which amount was paid to the defendant and credited upon said notes before maturity; that plaintiffs sold the other trucks in July, 1920, for the sum of $34,-

300; that said draft was made payable to the defendant and delivered to the defendant, less exchange of $40.25, the defendant actually receiving the sum of $34,259.75; the defendant was entitled to charge against the plaintiffs the sum of $50 as expenses for loading the trucks and $238.50 as premium paid for insurance on said trucks; that all of said trucks were sold by plaintiffs without expense to the defendant, except the items as above stated; that defendant after repeated demands made by the plaintiffs for a final settlement, on the 23rd day of July, 1920, after reserving and holding the sum of $2,292.75 as interest, paid the plaintiffs the sum of $10,928.50, claiming that said amount was all that was due the plaintiffs under the contract; that defendant refused to pay any of the money until plaintiffs had signed a certain receipt; that the said sum of $2,292.75, so held and reserved by defendant, exceeded the maximum contract rate of ten per cent. and was usurious and unlawful and was so known by defendant; that plaintiffs had made written demand upon the defendant for the return of $4,585.50, as provided by law, and prays judgment for the said sum of $4,585.50, together with a reasonable attorney's fee and all their costs expended. Copies of the notes, receipts and written demand were filed as exhibits to the petition and made a part thereof.

The defendant answered by way of an unverified general denial.

Plaintiffs introduced their testimony and at the close of the testimony on part of the plaintiffs, the defendant demurred to the evidence of plaintiffs on the grounds that the same was not sufficient to sustain plaintiffs' cause of action, which demurrer was by the court sustained, and exception reserved by the plaintiffs and the court thereupon directed the jury to return a verdict in favor of the defendant.

A motion for new trial was filed, heard and overruled; exception reserved, and the court entered judgment thereon in favor of the defendant and against the plaintiffs for costs, from which judgment the plaintiffs appeal to this court for review.

The attorney for plaintiffs sets up seven assignments of error, but contents himself with arguing the same under one head, that is, that the court erred in sustaining the demurrer of defendant to the evidence of plaintiffs and directing the jury to return a verdict for the defendant, which is the only matter urged by attorney for plaintiffs in his brief.

The rule to be applied here has been de-termined by this court in numerous cases as follows:

"It is the settled rule that a demurrer to the evidence admits every fact which the evidence in the slightest degree, tends to prove, and all inferences or conclusions that may be reasonably and logically drawn from the evidence. This court will consider as withdrawn all the evidence, which is most favorable to the party demurring. If the inference to be drawn from the evidence is a reasonable one, although not a necessary one, the court will not invade the province of the jury by taking from it the right to pass on the facts to be deduced from such inference." Sartain v. Walker, 60 Okla. 258, 159 Pac. 1096.

And to like effect are the cases of Lyon v. Lyon, 39 Okla. 111, 134 Pac. 650, and Anthony v. Bliss, 39 Okla. 237, 134 Pac. 1122.

There has been no departure from the rule laid down in the cases, supra, but the same is the uniform holding of this court.

It, therefore, becomes necessary to examine the testimony introduced by plaintiffs at the trial. Only two witnesses were introduced by plaintiffs. The testimony of W. H. Oberthier, secretary and treasurer of Munn Brothers, was to the effect that the notes aggregating $23,500, were given by plaintiff through Paul R. Warner for the defendant and indorsed by him to the defendant, dated April 6, 1920, due May 6, 1920, secured by mortgage on 13 trucks, for a loan; that the first payment made on the notes was on or about April 27th, by the sale of one of the trucks for $2,750, and there were no further payments made until on or about July 15th, which was by the sale of the balance of the 12 trucks for $34,300 by draft, which was drawn in the defendant's name and delivered to the defendant; that the plaintiffs owed $40.25 exchange on the draft and an extra charge of $50.00 for loading the trucks and insurance on the trucks of $238.50, which amounted to the total sum of $328.75, and after deducting this amount from the amount received from said sale left the sum of $33,971.25; that on the 15th day of July, 1920, in addition to the balance due defendant, there was due interest at ten per cent. from May 6th, in the sum of $401.44, which added to the principal of the notes, made the amount due on that date to the defendant $23,901.44; that defendant paid to plaintiffs $10,928.50; that there was due plaintiffs from the defendant the sum of $12,621.85; that Mr. Fitzpatrick, of the Mid-Continent Motor Securities Company, paid the $10,928.50 by check to the plaintiffs; that he had trouble in getting a settlement, having made several demands on the defendant for settle-

ment before the above amount was paid; that he contended there was more money due than the defendant was offering to pay; that defendant never submitted any statement of the amount it was contending was the correct amount or made any statement for the settlement; that defendant required a receipt, stating in full that it had paid in full, and had identified a receipt given by him, which is as follows:

"July 23d, 1920.

"Mid-Continent Motor Securities Co.,
    "1006 Daniel Bldg.,
    "Tulsa, Okla.
"Gentlemen:

"Whereas you have collected the sum of $34,259.75, under the terms of a certain contract made and entered into by and between yourself and Maude B. Munn, dated April 6th, 1920, and have this day paid to me the undersigned the sum of $10,928.50 in full settlement of same;

"Now, therefore, I hereby acknowledge receipt of said sum of $10,928.50, and in consideration of same approve, authorize and consent to the deduction from said amount collected the sum of $23,331.25, same being the amount of the remaining indebtedness due under the terms of said contract, together with your expenses and attorney's fee.

"Mrs. Maude B. Munn
"By (Signed) W. H. Oberthier
        " Agent.
"M. J. Munn
"By (Signed) W. H. Oberthier
        " Agent."

On cross-examination he was asked if there was any agreement between plaintiffs and defendant as to what amount was due at the time the receipt was signed and he replied that there was none and then he was asked if, as agent of the plaintiffs, he had agreed with the defendant that a given amount was due from the plaintiffs and he answered yes, but the amount was never stated other than the amount stated in the examination in chief.

The testimony of A. C. Hunt, who acted as attorney for the plaintiffs, said he made a demand on Mr. Fitzpatrick for a settlement and that he and Mr. Munn, one of the plaintiffs, figured that there was something over $12,000 due the plaintiffs on the proceeds of the draft; that Mr. Fitzpatrick claimed that there was only a little over $10.000. Mr. Fitzpatrick claimed that he did not know much about the figures and that Mr. Parks, who was connected with the defendant company, was in California and that there was some kind of a commission charge and that he was only authorized to pay something over $10.000 and that he proposed to Mr. Fitzpatrick that if he would pay the $10,000 he would let the remainder remain in the hands of Mr. Fitzpatrick until Mr. Parks returned and would adjust the matter later, and that Mr. Fitzpatrick said he personally had no objection to doing that, but he had instructions to turn over none of the money unless the receipt was signed; that the $10,928.50 was paid on the amount that was due and there was no agreement between the parties as to the exact amount that was due at that time; that one was claiming something like $10,000 and the other $12,000; that he told Mr. Fitzpatrick that if they forced plaintiffs to execute the receipt, that he knew the usury laws of the state and that plaintiffs would have to take steps in order to get the money due and Mr. Fitzpatrick said go ahead, he would not have any trouble, but would be forced to carry out the instructions relative to it; that he advised the plaintiffs that they could sign the receipt and start litigation as to the difference and identified the receipt heretofore set forth in this opinion.

This is substantially the evidence on part of the plaintiffs. From this evidence it is very clear that the relation of debtor and creditor for money loaned existed between the plaintiffs and defendant: that five notes, aggregating $23,500, were made, executed and delivered by the plaintiffs to the defendant, secured by mortgage; that on the date the notes fell due there was $187.50 interest, or a total of $23,687.50, less the net proceeds of the sale of one truck for $2,750, leaving a balance due on May 6th of principal and interest of $20,937.50, and that on July 15, 1920, when the proceeds of the sale of the other trucks were received the interest to that date amounted to $403.29, as shown by attorney for plaintiffs in his brief, making a total due of $21,340.29, after adding the charges for insurance and loading trucks of $288.50, making a total due the defendant of $21,629.29; that defendant received $34,259.75, net after deducting exchange on draft from the last sale of the trucks and deducting the amount of $21,629.89 due the defendant, leaves a balance due the plaintiffs of $12,630.46, and the amount paid plaintiffs by the defendant of $10,928.50 from this amount leaves an amount reserved and charged over and above the ten per cent. interest of $1,701.96, belonging to the plaintiff. The total amount of interest due at ten per cent. was $500.79, which added to the excess reserve charged and exacted by defendant of $1,701.96, makes a grand total charged, exacted and reserved by defendant of $2,292.75 on the $23,500 loan and plaintiffs are seeking to

recover double said amount as provided in Comp. Stats. 1921, sec. 5097, which is as follows:

"The legal rate of interest shall not exceed six per cent. in the absence of any contract as to the rate of interest, and by contract parties may agree upon any rate not to exceed ten per cent. per annum. Said rates of six and ten per cent. shall be, respectively, the legal rate and the maximum contract rates of interest."

Section 5098, Comp. Stats. 1921, provides as follows:

"The taking, receiving, reserving or charging a greater rate of interest than is provided by the preceding section shall be deemed a forfeiture of twice the amount of interest which the note, bill or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case a greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover from the person, firm or corporation taking or receiving the same in an action in the nature of an action of debt twice the amount of the entire interest paid."

This court, in defining what constitutes usury under the statute, in the case of Midland Savings & Loan Co. v. Tuohy, 69 Okla. 270, 170 Pac. 244, says:

"Usury is the taking of a greater premium for the use of money loaned than the law allows, and if the lender takes, receives, reserves, or charges a greater rate than 10 per cent. per annum, he forfeits twice the amount of the interest which has been agreed to be paid thereon; and whatever the form of the transaction may be, it is usury if the rate of interest taken, charged, reserved, or received is unlawful."

In the case of Bean v. Rumrill, 69 Okla. 300, 172 Pac. 456, 457, this court again said:

"It is the uniform policy of the courts not to permit an act forbidden or penalized by statute to be done either directly or indirectly. This court will not uphold any shift or device by which the lender may receive more than 10 per cent. per annum for the use or forbearance of money.

"If interest is paid, either voluntarily or from the proceeds of the sale of the borrower's property, it can not logically be said that the same was not paid by the borrower. The law does not require a showing that the interest was voluntarily paid."

And in the body of the opinion, the court quoted from Kendig v. Marble, 55 Iowa, 386, 7 N. W. 630, as follows:

"'The law will permit no device to cover and protect a usurious contract. If a judgment by confession, or otherwise, be a' part of such device intended to prevent the disclosure of the real character of the contract, it will not bind the parties. If the law were otherwise, the usurer could with little trouble defeat the statute.'"

In the case of Citizens' State Bank v. Strahan, 63 Okla. 288, 165 Pac. 189, this court said:

"The great weight of authority, both in the state and federal courts, is that usury statutes, being remedial, should be given a liberal construction that will carry out the intention of the law-making body. Ordway v. Central Nat. Bank, 47 Md. 217, 28 Am. Rep. 455; Farmers' Nat. Bank v. Dearing, 91 U. S. 29, 23 L. Ed. 196; Baker v. Bryant, 24 Cal. 87, 140 Pac. 310; Citizens' Bank v. Donnell, 172 Mo. 384, 72 S. W. 925; Albion Nat. Bank v. Montgomery, 54 Neb. 681, 74 N. W. 1102."

It is contended by attorney for defendant that the giving of the receipt was a complete settlement of the differences between the parties, but in the light of the decision of this court in the case of Gunn v. Fryberger, 71 Okla. 170, 176 Pac. 248, this receipt cannot be taken as an accord and satisfaction of the claims of the plaintiffs in this action, for, in that case, this court said:

"It is a settled rule that, if the compromise agreement is accepted in satisfaction of the original demand, and the agreement to accept is based on sufficient consideration, the original demand is extinguished, and cannot be the foundation of an action, and it makes no difference whether the original demand was on tort or on contract; but the promise or agreement will not operate as a satisfaction of the original debt or demand, unless the claimant intended to accept it as such, and such intention must be alleged and proven. To have the effect of extinguishing the original claim, the new promise must be one legally binding, and an essential element of the new agreement—like any other contract—is a consideration. 1 C. J. 567, 568; Manley v. Vermont Ins. Co., 78 Vt. 337, 62 Atl. 1020, 6 Ann. Cas. 562. In the case of Wilder v. Millard, 93 Neb. 595, 141 N. W. 156, it was said:

"'The defense of accord and satisfaction is not sustained, without allegations and proof that there was a substantial difference between the parties as to the amount due, and that the accord and satisfaction was in settlement thereof.'"

The evidence in this case clearly shows that it was not the intention of the plaintiffs to accept this amount in satisfaction of the balance due them, for the testimony of Mr. Hunt shows clearly that it was the intention of the parties and Mr. Fitzpatrick was informed that if he compelled the signing of the receipt before the payment of the money, that the plaintiffs would immediately begin an action under the usury

statute of this state and his answer was to go ahead. There was no plea of accord and satisfaction in defendant's answer and defendant offered no proof on its general denial.

It is very clear that the defendant retained and held, reserved and charged a greater rate for the use of the money than ten per cent. per annum and in an amount far beyond the statutory contract rate for the use of the money, and in the cases cited above, the form of the transaction makes no difference, it is usury if the rate of interest taken, charged, reserved and received is unlawful. There is sufficient evidence in this case to put the defendant upon his proof, and it never did furnish the plaintiffs any statement in justification of the reservation of the $1,701.96 and the court should have compelled it to allege as a defense and prove in its defense, and show and give a lawful reason whereby such amount was reserved.

Following the rule laid down by this court that all evidence favorable to the demurrant must be excluded where a demurrer is filed to the evidence of the opposing party, we are of the opinion that the evidence introduced by plaintiffs was sufficient to carry the case to the jury, and if unexplained, to sustain the judgment asked for in the petition in this cause, and it, therefore, follows that, in our opinion, the court committed reversible error in sustaining the demurrer to plaintiffs' evidence and for this reason, the cause is reversed, with orders to the trial court to grant a new trial.

By the Court: It is so ordered.