## FIRST STATE BANK of WEBB CITY v. BROOKS.

No. 17376. Opinion Filed Oct. 25, 1927.

(Syllabus.)

1. **Appeal and Error—Questions of Fact—Conclusiveness of Verdict for Defendant Pleading Payment in Suit on Note and Chattel Mortgage.**

Where, in a suit by plaintiff to recover upon a promissory note and for the possession of personal property covered by a chattel mortgage and for foreclosure thereof, defendant pleads payment and submits evidence which reasonably supports said plea, and a jury under proper instructions finds for defendant on this issue, such finding will not be disturbed on appeal.

2. **Bills and Notes—Sufficiency of Evidence of Payment.**

Evidence of defendant as to payment of note examined, and it is held sufficient to be submitted to a jury and to warrant their finding thereon that the note in controversy had been paid.

3. **Chattel Mortgages—Usury—Penalty for Usury and Failure to Release Mortgage—Cross-Petition Stating Cause of Action.**

Cross-petition of defendant examined, and held, that it states facts sufficient to constitute causes of action against plaintiff.

4. **Same—Evidence not Sustaining Recovery of Penalties and Attorney's Fee.**

Evidence examined, and held, that same is insufficient to warrant a recovery by defendant upon the grounds of usury, and for failure to release chattel mortgage, and attorneys' fee.

Commissioners' Opinion, Division No. 2.

Error from District Court, Osage County; Jesse J. Worten, Judge.

Action by First National Bank of Webb City against R. T. Brooks. Judgment for defendant, also judgment on defendant's cross-petition against plaintiff, and plaintiff brings error. Modified and affirmed.

Prentiss E. Rowe, for plaintiff in error.

Holcombe & Lohman, for defendant in error.

BENNETT, C. A civil action tried in the district court of Osage county, Okla. wherein First National Bank of Webb City was plaintiff and R. T. Brooks was defendant. From a verdict and judgment in favor of the defendant, plaintiff appeals to this court for review. The parties will be referred to as plaintiff and defendant, as they were designated in the trial court.

Plaintiff alleges that on June 10, 1924, defendant executed and delivered to plaintiff his promissory note in the sum of $467.75 due July 10, 1924, with ten per cent. interest and at the same time, and for the purpose of securing the payment of said note, the defendant executed and delivered to plaintiff a certain chattel mortgage covering certain horses, cows, wagons, harness, etc., and that there was paid on said note on June 25, 1924, the sum of $150 and on July 8th of the same year $60, and that there remains due and payable on said obligation the sum of $260.75 with interest thereon at ten per cent. from July 10, 1924, and an attorney's fee of $100 according to the terms of a stipulation therefor in the mortgage. Copies of the note and mortgage are attached to and made part of the plaintiff's petition, and designated as Exhibits "A" and "B," respectively. Defendant filed an answer and cross-petition in several counts. The same consists of, first, a general denial followed by an admission of the execution by defendant of the note and mortgage sued upon by plaintiff; but the defendant alleges that the same is paid in full. For a second defense and counterclaim defendant says: (1) That he makes the allegations of his first defense a part of this his second defense. (2) Defendant admits the execution of the note and mortgage sued on by plaintiff, but he allege that the conideration therefor was $400 in cash loaned by plaintiff to defendant, which sum and no more defendant received from plaintiff at the time of the execution of the papers; that the sum of $67.75 was interest charged the defendant by plaintiff, and that the defendant, between June 10, 1924, and July 10 1924. paid the entire amount of said note, principal and interest, amounting to $467.75 Wherefore, defendant prays judgment, that he recover double the amount of interest so paid, amounting to $135.50, and for $100 as an attorney's fee. (3) The defendant, for his third answer and counterclaim, makes the allegations of his first and second defense and counterclaim by reference a part of this his third defense admits the execution of the note and mortgage, but says that the same has been paid in full; that at the date and time of payment he made demand in manner and form as required by law upon the plaintiff for the release of the chattel mortgage on his personal property hereinbefore described, which demand was and has always been refused, and that by reason thereof defendant's credit has been damaged in the sum of $500, and that defendant is entitled to recover in addition the pen-

alty of $50 for failure to release the chattel mortgage. There was a reply by plaintiff consisting of a general denial and special denial that the note and mortgage had been paid or that a demand for release had been made.

The following is the substance of the testimony: O. C. Roberts, witness for plaintiff, says: That he was cashier of the First National Bank of Pawnee which acquired the First State Bank of Webb City and its assets; that he is acquainted with the defendant. At this point it is admitted that Exhibits "A" and "B" are copies, respectively, of tre note and mortgage sued upon, and they are introduced in evidence without objection, said note and mortgage being in the ordinary form. The witness says that the note and mortgage have not been paid; that he knows that because the note was among the assets of the Webb City Bank when the same were taken over, and there is no record of its ever having been paid; that the First National Bank of Pawnee acquired the First State Bank of Webb City August 15, 1924, after the maturity of the note in suit. Witness had transactions with Brooks; tried to get him to pay the note, but he would not do it. Witness did not make the loan of money and did not take the note. Had nothing to do with the note or the payments thereon. Made demand on Mr. Brooks for the payment of the note, but it was not paid. Plaintiff rests.

After demurrer of defendant was overruled, R. T. Brooks, the defendant, in his own behalf testified: That he lived at Blackwell; formerly lived at Shidler and at Webb City; occupation, teaming; admits signature on the note and mortgage. Says that he borrowed $400 and that was the amount he received from Mr. Henson who was an officer of the Webb City Bank. Borrowed this money to buy a wagon and team. Witness went into the bank on the 25th of June and paid on the note. $400, and on July 8th paid the balance of $67, and demanded the return of his note, but the bank refused. saying they had him charged with an additional amount of $257. He (Henson) and witness got into a jawing match and agreed to fix it up Monday morning following. That was the last the witness saw Henson. Witness paid the $400, on this particular note and also the $67. At that time witness demanded the return of his note and mortgage. Henson told witness that he would see the directors promptly and arrange to give up his note and mortgage by the following Monday morning.

Witness went back on Monday morning, but Henson was gone. Witness has not seen him since, but he is here today. Witness has not talked with Henson since.

Cross-examination: Paid the $400 about the 25th of June; paid part of it by check of Phillips Petroleum Company for whom witness was working, and the balance of it in cash. Thinks the check was for $207.50. The difference the witness paid in cash; paid the cash in bills; don't remember the amount, but paid them in all $400, that is, by check and cash; this was paid to Henson. The $67 and something was for interest; that was paid July 8th or about that time. That was paid in money, bills; do not know the size or number, but perhaps ones, fives and tens. Witness is acquainted with Mr. Roberts. Mr. Roberts never demanded payment of the note from witness. Never had a conversation with Mr. Roberts to the effect that since the note was for insurance money had decided not to pay it. Witness never had any such conversation with Roberts, and Roberts never demanded payment of the note. Never said a word to witness. Witness knows Herman Huffein, that is, has seen him a time or two. He never made a demand for the payment of the note. Never had any conversation with Mr. Huffein to the effect that witness did not intend to pay the note, and that it represented an insurance policy which he was going to give up. Witness had no such conversation. Witness did not go to Mr. Roberts and ask to borrow more money on the same credit. Had no such conversation with him. Never asked Roberts to extend the note or to loan witness more money.

Witness worked for Phillips Petroleum at Webb City three years; then moved to Bramen and from there to Blackwell. Did not have conversation with Mr. Roberts in which he promised witness that he would give him plenty of time. Did not say to Mr. Roberts that he would not pay another cent on that note. Did say that to a heavy set fellow, but does not know his name. That after Henson sold the bank or got out of it, witness sold a man a wagon and team and wanted to have the mortgage made out and the heavy set fellow made it out, and asked what witness was going to do about this note and mortgage, and witness told him that it was paid, and that he was not going to pay any more, and told him that he had paid the bank all he owed them. That was the entire conversation. The bank claimed $257 but the witness refused to pay it. Witness says that he expects this $257 was the amount of insurance premium on a life insurance policy taken out upon his life, but that he does not know. That he never saw any insurance policy; that Judge Purcell made no demand upon the witness for the payment of this note, and did not tell Judge Purcell that since the note represented an insurance premium he would not pay it. Witness says that the note and mortgage have been paid.

Mrs. Brooks is called as a witness, but later her evidence is excluded.

C. C. Roberts, for the plaintiff, testified that he had a conversation with the defendant, Brooks, in the bank with reference to the note. Defendant never mentioned having paid it. Defendant said that he did not intend to pay the note because it was an insurance note. At another time defendant said he would like to borrow more money, and witness said to him, "to show you that I wish to do the right thing I will let you have more money, if you will put it all together in one deal." Defendant said he did not know about that, that he would study it over a few days. Later he came back and said he did not wish to do that, never made any contention that the note had been paid; but he says a part of it represented insurance note, and that he did not intend to pay that.

Cross-examination: Never made any contention that he had paid the note, nor any part of it, but defendant did say that he had paid it down to the insurance note, and that was all he intended to do. The premium on the insurance policy was $257.75, the exact balance due on the note. There is introduced in evidence an insurance policy on the life of defendant. Witness says that the defendant had only one note in the bank, so far as he knows. That there was but one note in the bank when the Webb City Bank was taken over by witness' bank, and that is the note sued on in this action, and that is the note the balance of which defendant said he would not pay because it represented insurance. Witness does not know anything about the conversation between the defendant and Henson.

Homer Huffein, witness for plaintiff: Employed in the First National Bank of Pawnee as assistant cashier and teller. Is acquainted with defendant. Had a conversation with him after this note sued on became due about payment. Defendant came in and demanded that we release mortgage on stock, and whatever we had mortgage on, saying that it was insurance money and that he did not intend to pay it, and that he wanted the mortgage released. Defendant said that it represented insurance

money, that he did not intend to pay. Never contended that the note should be paid. Defendant never contended that he did not owe the note—just stated that he did not intend to pay it because part of it was insurance.

Cross-examination: Witness went to work for the Pawnee Bank after this note became due, about the time the National Bank took over the Webb City Bank. Was not in bank at the time the note and mortgage were given. Knows nothing of the conversation between Brooks and Henson. Does not know how much was paid on the note except only as the note shows. When the defendant came in he wanted to know about the note, the amount of it; said nothing about what had been paid or anything; just said he wanted the mortgage released: that he did not intend to pay the note; that it was an insurance note and that he did not intend to pay it. At the time the National Bank took over the Webb City Bank this note was past due.

Henry Henson: Lives at Yale; was connected with the First State Bank at Webb City in June and July 1924. Defendant was a customer of the bank. Witness presented the note for payment to defendant. Said that he wanted to pay it down to the amount of the insurance, and then defendant wanted the security released. Witness told him that he could not release the security, but that defendant could pay the note down to the amount of the insurance policy premium. Defendant never contended that he did not owe the note, but wanted the security taken from back of it and witness told him that could not be done. The note was paid down to the amount of premium for insurance. The payments appearing on the note represent the amount paid on the same by defendant aggregating about $210. He paid the note down to the amount of the premium on the policy. Defendant did not pay $400 on the 25th of June, and the defendant did not direct a credit to be placed on the $467 note. Did not pay the balance of the note on the 8th of July. He made two payments on the note, one about the 25th of June, the other about July 8th, and the payments as indorsed on the note are for the correct amounts. Defendant did not demand his note; he just wanted his security, his mortgage released. Did not say he wanted the note; he wanted the mortgage taken down; wanted the security taken down from behind the note. Witness did not get into a very heated argument with defendant. Defendant was possibly kind of peeved at witness. He never told the defendant to

come in Monday morning and that the note and mortgage could be arranged, but the defendant wanted the security released, and witness told him that the new people who had taken over the bank would have to be consulted. Later, that is, after July 8th, witness informed the defendant that the security could not be taken down without the consent of the new owners of the bank. Witness told defendant he could not release the mortgage, but that if defendant wished more money he could have it upon a new note and mortgage. Told the defendant the note was then in the hands of new people. There was an insurance agent selling insurance out there and some of his notes were handled by the bank. The bank did not buy all of his notes and the agent was in the bank at times.

"By the Court: Did you ever have a note in the bank there given for the payment of this insurance policy? A. Yes, he gave a note for the policy. Q. Did you collect that note? * * * A. Well, it was paid in this way, he came in to borrow some money, and I told him that he would have to put this note in with the other note with the security behind both of them, and I would make him a loan, and so that way I made the loan, and all in that one note. Q. All what in one note? A. The insurance and the loan note. Q. How much was the insurance note? A. $257. Q. How much money did you let him have at the time he borrowed the money? A. Well, the way I remember, it was the difference between the loan and the insurance policy."

The face of the note sued on represents the indebtedness of the defendant to the bank.

W. M. Purcell, witness for plaintiff, lives in Kaw City; formerly resided in Osage county two years prior to moving to Kaw City. Knows the defendant. Presented the note in question to Mr. Brooks for payment. Defendant did not say the note had been paid. Witness cannot remember just what his claim was, but thinks that defendant was simply unable to pay it. Demanded payment of the note, and also possession of the property covered by the mortgage, both of which were refused by defendant.

Mr. Henry Hanson recalled for further cross-examination: Does not know exactly when the insurance note was given or how long it was before the giving of the note in suit, but thinks it was somewhere from 30, 60 or 90 days. Not sure as to whether the policy was issued at that time or not. The policy was written up and Mr. Brooks received the policy, but do not know the date. Possibly the insurance policy was dated the same day as

the note. The insurance policy is dated the 9th of June. Witness finds that he is mistaken as to the date of the insurance policy with reference to the date of execution of the note. Witness says that it is his recollection, that the defendant had possession of the insurance policy. Witness will not state that the policy has not been kept in the bank. Thinks the defendant had the policy at the time he made the $467 note. Collected the insurance note by adding it into the new note. Witness thinks that Brooks signed up for the policy and left it in the bank for safe-keeping. Insurance transactions were not conducted by the bank. The bank parted with the money and paid the premium for the insurance policy which Mr. Brooks owed.

R. T. Brooks recalled for the defendant: Witness never had possession of the insurance policy.

"Q. You heard Mr. Henson testify a moment ago that at the time you borrowed this money he—or made this note for $467, that you had an insurance note there in the bank there at that time, and that they took out the amount of that note which was $250 or $260, or approximately that amount and gave you the balance in cash? A. Yes, sir. Q. Is that true? A. Yes, sir."

Witness thinks he made the insurance note after the time he made the $400 note, something like 30 days. Had had no insurance transaction at the time of making the $400 note.

Cross-examination: In a way the witness took insurance from the Mid-Continent Life Insurance Company. He identified his signature on the photographic copy of the insurance policy.

"Q. (By the Court): What did you receive in money or at the time you signed that note? A. Oh. $400. Q In cash? A. In cash. * * * Q. I understand, but what did they give you for signing this note? A. $400."

The insurance policy is introduced and shows that Robert Taylor Brooks is insured for $5,000 in Mid-Continent Life Insurance Company, premium $357.75, policy is dated June 9, 1924.

The case was submitted to the jury after being instructed by the court, who thereafter returned into court their finding for the defendant and fixing the amount of recovery against the plaintiff at $185.50. Thereupon the defendant moved for judgment upon the verdict and judgment was rendered for the defendant for $185.50 and $100 attorneys' fee and costs. There was a motion for new trial setting out eight grounds, and petition in error sets out nine grounds of complaint, and in the plaintiff's brief he urges five propositions before the court, First, that the court erred in overruling plaintiff's demurrer to the evidence of defendant; second, that the verdict of the jury is not sustained by sufficient evidence; third, that the cross-petition or pleading of defendant does not state facts sufficient to constitute a cause of action against the plaintiff; fourth, that the verdict of the jury is not sustained by sufficient evidence and is contrary to both the law and the evidence; and, fifth, that the motion for new trial should have been sustained.

Upon a most careful examination of the evidence, we are of the opinion that the first ground is not well taken, and hold that there was sufficient evidence to withstand the plaintiff's general demurrer, it being the rule of this court that if the petition states facts entitling the moving party to any relief, a demurrer thereto should be overruled. Gould v. Gray 104 Okla. 225. 230 Pac. 926; State v. McCurdy, 115 Okla. 111, 241 Pac. 816.

Second. Ground No. 2 will be dealt with later in conjunction with ground No. 4.

Third. The court is of the opinion that the cross-petition of defendant does state facts sufficient to constitute a cause of action against the plaintiff. It is the contention of the plaintiff under this head that in a petition for the recovery of a statutory penalty, usury, every element of the offense, including intent, must be pleaded, and that the pleading should allege that the taking and charging of usury was **knowingly done.** It will be observed that this question is raised in this court for the first time.

It is also quite clear from our examination of the law that there is quite a material difference between section 3; article 14 of our Constitution, which reads as follows:

"The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case a greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives. may recover from the person firm, or corporation taking or receiving the same in an action in the nature of an action of debt, twice the amount of the interest so paid; provided, such action shall be brought within two years after the maturity of such usurious contract; provided, however, that this section may be subject to such changes as the Legislature may prescribe."

—and section 5098, C. O. S. 1921, which brings forward an act passed by the Legislature of 1916, which is as follows:

"The taking, receiving, reserving or charging a greater rate of interest than is provided by the preceding section shall be deemed a forfeiture of twice the amount of interest which the note, bill or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case a greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover from the person, firm, or corporation taking or receiving the same in an action in the nature of an action of debt twice the amount of the entire interest paid; provided that such action shall be brought within two years after the maturity of such usurious contract; provided, further, that when any suit is brought upon any note, bill or other evidence of indebtedness or to foreclose any mortgage or lien given to secure such indebtedness when a greater rate of interest has been collected, reserved, charged or received than is provided for in this act, the defendant, or his legal representative, may plead as a set-off or counterclaim in said action twice the amount of the entire interest collected, reserved, charged or received in said transaction or in all such transactions between the same parties."

From an examination of the foregoing it will be seen that the word "knowingly," which was carried in the constitutional provision, is omitted entirely from this statute.

Plaintiff further contends that the defendant cannot set up a penalty for usurious interest where the same has been actually paid in the same suit by a cross-petition against the plaintiff, and cites in support thereof Mires v. Hogan, 79 Okla. 233, 192 Pac. 811, which case quotes from the Constitution as follows:

"Under section 3, art. 14, Const., if usury has been contracted for and not paid, the penalty may be pleaded by the defendant as a set-off in an action to recover the debt; but, if such usurious interest has been paid, it cannot be set up as a defense in an action to recover the debt, but can only be recovered in a separate action brought for that purpose within two years after the payment of the usurious interest. The two years statute of limitations begins to run from the date of payment, and not from the due date of the note or contract." Gunness v. Stever, 60 Okla. 24, 158 Pac. 568; First National Bank v. Hutton, 64 Okla. 198, 166 Pac. 726; Daniels v. Bunch, 69 Okla. 113, 172 Pac. 1086; Munn v. Mid-Continent Motor Sec. Co., 100 Okla. 105, 228 Pac. 150; Dies v. Bank of Commerce, 100 Okla. 205, 229 Pac. 474.

It is contended by the plaintiff that while the defendant has styled his pleading a cross-petition, it really amounts to nothing more than a defense, and that it cannot be asserted as the basis of a counterclaim.

It will be observed that the amendatory act of the Legislature of 1916 brought forward in C. O. S. 1921, section 5098, changes materially the law with respect to the recovery of a penalty for usurious interest, and that the latter part of the amendatory section (5098) is as follows:

"Provided, further, that when any suit is brought upon any note, bill or other evidence of indebtedness, or to foreclose any mortgage or lien given to secure such indebtedness when a greater rate of interest has been collected, reserved, charged or received than is provided for in this act, the defendant, or his legal representative, may plead as a set-off or counterclaim in said action twice the amount of the entire interest, collected, reserved, charged or received in said transaction or in all such transactions between the same parties."

And this act has been construed in Clark v. Duncanson, 79 Okla. 180, 192 Pac. 806; Mires v. Hogan, 79 Okla. 233, 192 Pac. 811; McKanna v. Thorne, 87 Okla. 74, 209 Pac. 1039.

These observations dispose of all the contentions, we think, of the plaintiff in error, save that the evidence does not support the verdict.

There was a recovery below by the defendant, the effect of which was to declare that the plaintiff's note against defendant was fully paid; and, second, that the defendant was entitled to recover against the plaintiff usurious interest and the statutory penalty for refusing to release a chattel mortgage, in the total sum of $185, and an attorney fee of $100. In our opinion, this testimony, while sufficient to be left to a jury for their determination as to whether or not the note has been paid, is insufficient upon which to predicate a judgment for the defendant for usurious interest or for the statutory penalty. The law does not favor penalties. A transaction which is unlawful is quasi-criminal. If a certain transaction may be construed either as being lawful or unlawful under a given state of facts, the courts, with that inherent consideration for fair dealing, and bearing in mind the presumption that men deal fairly and honestly with each other, will always adopt the theory that they have committed no wrong and that the transaction is honest and lawful. It will serve no useful purpose here to repeat the testimony upon which

127—8

these penalties must be predicated if they are allowed to stand. Suffice it to say that, even on direct examination of defendant himself, who is his only witness, his testimony with respect to this loan is palpably contradictory, if not willfully false. He swears first, in answer to several questions and one by the court itself, that he received from the plaintiff $400 in cash as the consideration for his note for $467.75. After the testimony of plaintiff is introduced he is examined further by his counsel, and his attention is directed to the testimony of the witness Henson, the cashier of the plaintiff bank, and these were his words:

"Q. You heard Mr. Henson testify a moment ago that at the time you borrowed this money he—or made this note for $467, that you had an insurance note there in the bank there at that time, and that they took out the amount of that note which was $250 or $260, or approximately that amount, and gave you the balance in cash? A. Yes. sir. Q. Is that true? A. Yes, sir."

There are many cases in our court holding that, if there is a dispute or controversy between the parties as to the amount due on the mortgage and it is claimed in good faith that there is a balance due, no liability for damages arises for failure to release. First State Bank of Indiahoma v. Carr, 72 Okla. 262, 180 Pac. 856; Smith v. Colson, 31 Okla. 703 123 Pac 149. See, also, the leading case of Schumacher v. Falter. 113 Wis. 563, 89 N. W. 485. The judge in that case uses the following words in substance: Where there is no intentional wrong in the refusal to discharge, but rather reliance in good faith upon some supposed legal right, the penalty will not be imposed, even though the supposed right may be found not to exist, citing many cases. In Burrows v. Bangs. 34 Mich. 304. Mr. Justice Cooley disposes of a claim for a penalty in the following words:

"But if there has been an honest difference between these parties regarding their rights, we do not think the defendant is subject to the statutory penalty for not discharging the mortgage."

This same doctrine is followed with approval in American National Bank v. Jorden. 123 Okla. 151, 254 Pac. 706.

It is too manifest for argument that, if they gave the defendant in cash the difference between his insurance note for $250 or $260 and the $467 note, they gave the defendant every penny that he was entitled to, and there could not possibly have been any usurious interest collected, reserved, or

charged, since, by his own statement later on, the defendant said that he had paid back to the plaintiff $400 at one time and $67 at another, which was the exact amount he owed them, dollar for dollar, if his testimony it to be taken as true. There could have been no misunderstanding this question by the defendant, for it was repeated. With this testimony in the record, how can we sustain a penalty against the plaintiff which must be based upon the untruthfulness of the defendant? While the defendant at another place testified that he received but $400 from the bank and paid back $467, to sustain his contention in the latter statement we must disregard the admission recounted above.

For the reasons above set out, we hold that the judgment below be affirmed, subject to the following modification: That the defendant's recovery against the plaintiff for usurious interest amounting to $135, the penalty of $50 for failure to release the mortgage. and $100 attorney's fee, be vacated and set aside. and the lower court is ordered to make such orders as will dispose of the cause in conformity herewith.

DIFFENDAFFER, HERR, JEFFREY, and HALL, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. pp. 851, 853, §2834: 2 R. C. L. p. 193; 1 R. C. L. Supp. p. 433; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 79; 6 R. C. L. Supp. p. 73. (2) 8 C. J. p. 1057. §1365; p. 1069, §1389: 21 R. C. L. p. 136; 3 R. C. L. Supp. p. 1138. (3) 39 Cyc. p. 1093. (4) 11 C. J. p. 692. §474: 39 Cyc. p. 1094.